**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANTONIO HINTON,

       Petitioner,                                Case No. 05-CV-70849-DT
                                                              Honorable Arthur J. Tarnow

v.

TOM BIRKETT,

       Respondent.
_____/

**OPINION AND ORDER DENYING
PETITIONER'S WRIT OF HABEAS CORPUS**

**I.  Introduction**

Petitioner Antonio Hinton, acting *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  He is currently incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan, pursuant to convictions for criminal sexual conduct.  For the reasons stated, the Court denies Petitioner's writ of habeas corpus.

**II.  Facts**

Petitioner's convictions were as a result of an incident that occurred on December 15, 2001.  Petitioner testified at trial.  According to his testimony, he attended a gambling party at the home of his cousin, Paul Cranberry ("Cranberry").  Cranberry called Petitioner and asked him to come to the party to act as the doorman.  Cranberry said he would pay Petitioner one hundred and fifty dollars.  As people were leaving the party, Cranberry asked Petitioner if he had any friends that would be interested in coming to the party.  Petitioner said he did, and called his friend "Rico," who said he would come to the party and bring some girls.  Shortly afterward, Rico arrived with a male and three females, the complainant in this case, Caterina Biundo

("Complainant"), Amber Smock ("Amber"), and Nicole Barham ("Nicole").

Complainant testified that when they arrived at the party, Petitioner let them in. Once inside, she saw one woman and four men in the basement. About forty-five minutes later, complainant went upstairs to use the bathroom, and while she was in the bathroom, Petitioner walked in on her. Complainant said that Petitioner took down his pants and told her to "get down on my knees and give him head." She refused. Petitioner then said, "You're in my house, these are my rules, you do what I want." When complainant started crying, Petitioner told her, "bitch, get on your knees or I'll smack you." Complainant complied.

Subsequently, Petitioner forced complainant to turn around and attempted to perform anal sex on her but was unsuccessful. Petitioner then inserted his penis into her vagina. Complainant testified that she did not say anything to Petitioner while he was performing those acts because she was terrified that he would hurt her.

During that encounter, complainant's friend Amber knocked on the bathroom door. Petitioner answered. Complainant recognized Amber's voice. Amber asked Petitioner if complainant was okay, to which he replied she "was fine." Complainant did not say anything because Petitioner told her "to shut up, stand in the corner or he'd kill me."

A few minutes later, complainant's other friend, Nicole, came to the bathroom door to check on her as well. When Petitioner opened the door, Nicole could see complainant standing in the corner. Nicole testified that, through the door opening, she saw complainant mouth the words, "help me." Shortly afterward, the individuals at the party gathered outside the bathroom door and one of them tried to pry open the bathroom door with a coat hanger. Petitioner then opened the door. All witnesses testified that, once the door was opened, complainant ran out of

the bathroom and straight outside into the parking lot into a van. Amber told complainant to go to the police. Initially, complainant refused, but then went.

On cross-examination, complainant testified that there were drugs at the party, and that the owner of the house and his female friend were in the kitchen next to the bathroom at the time of the alleged assault. Complainant testified that Petitioner never tried to hurt her, but pushed on her shoulders to get her into position. She said he had no weapons and used no physical force. Complainant testified that she did not drink at the party because she was in a special program.

Further testimony from Petitioner revealed that, on that night, Amber was dancing on the table, and everyone at the party was smoking weed. He said that when he made eye contact with complainant, she jumped up from the couch and then they went upstairs together. It was Petitioner's testimony that when they went into the bathroom together, complainant knelt down in front of him and told him he had to pay. Petitioner then pulled out a condom, and pulled down his pants. Complainant took the condom, put it in her mouth and started giving him oral sex. Petitioner said that complainant told him she expected to be paid fifty dollars for each act.

Petitioner further testified that he believed complainant was willing to have sex with him because she knew she would be paid. It was his contention that Rico brought the girls to the party for the purpose of selling sex. Petitioner said that he intended to pay complainant after he got the money from his cousin, although he testified he shouldn't have to pay because he let them in the party for free, when everyone else that attended paid five dollars.

On cross-examination, when asked about forcing himself on complainant, Petitioner testified that he never forced himself on her and never disrespected her. He said that he was going to pay her and had no intentions of not paying.

### III. Procedural History

Petitioner was convicted of two counts of third-degree criminal sexual conduct ("CSC III"), M.C.L. 750.520d(1)(b), and one count of attempted assault with intent to commit criminal sexual conduct, M.C.L. 750.520g(1), following a bench trial in Wayne County Circuit Court, the Honorable Deborah Thomas presiding.  He was sentenced as a third habitual offender to concurrent terms of ten to twenty-five years' imprisonment for the CSC III convictions and seven to ten years' imprisonment for the attempt conviction.

Petitioner, through counsel, filed an appeal with the Michigan Court of Appeals, raising the following two issues:

I.  Whether there was insufficient evidence of force or coercion to support convictions for criminal sexual conduct-third and whether defendant was denied due process in violation of the constitution and is reversal required.

II. Whether the trial court erred in its findings of fact and law when it found the complainant only consented if paid and is reversal required.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Hinton*, No. 246221, 2004 WL 1335818 (Mich.App. June 15, 2004) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same issues as raised on direct review to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave on December 29, 2004.  *People v. Hinton*, 471 Mich. 952, 690 NW2d 109 (2004).

Petitioner filed the pending petition for a writ of habeas corpus on March 4, 2005, asserting the same issues as in both state appellate courts.  Respondent filed its answer on August 9, 2005, stating that the Michigan Court of Appeals' decision, the last court to issue a reasoned decision in this case, was not an unreasonable application of or contrary to federal law.

## IV. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

Petitioner must therefore demonstrate that the Michigan Court of Appeals' decision was contrary to or involved an unreasonable application of existing federal law.

5

### V.  Analysis

### A.  Insufficient evidence of force or coercion claim.

Petitioner claims that he is entitled to habeas corpus relief because there was insufficient evidence of force or coercion to support his convictions.  Petitioner contends that it was consensual sex because complainant was a prostitute.  He argues that the trial judge did not make her decision based on the facts of the case, but instead on the following: if complainant were a prostitute, then it was consensual sex only if she got paid; thus, if complainant did not get paid, then she did not consent.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.  In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous.  28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027 (1996).  Obviously, this standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.

The last state court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, held, in pertinent part:

> The complainant testified that she was terrified when defendant walked in on her in the bathroom and told her to get on her knees. She told defendant not to make her do it, but he threatened to hit her if she did not comply. In order to assist in her compliance, defendant pushed her down to the ground by her shoulders. The complainant also testified that when a friend came to check on her, defendant told the complainant to be quiet or he'd kill her. A few minutes later, another friend checked on the complainant and through the cracked door the witness could see the complainant mouth, "Help me." Subsequently, the people present at the party gathered outside the bathroom door and someone tried to open it with a coat hanger. When defendant opened the door, all witnesses, including defendant, agreed that the complainant ran straight outside into the parking lot.
>
> Furthermore, testimony from another witnesses (sic) revealed that although defendant was not a large man, his demeanor could be extremely intimidating. This witness, a friend of the homeowner, stated that defendant tried to engage her in oral sex. When she refused, he began yelling profanities at her. "He was very intimidating, you know. I was really afraid because he was just irate." It was undisputed that the complainant was a very petite woman, and according to her testimony, defendant's words and tone were enough to secure her compliance. The court had the opportunity to observe her on the stand and determine if she was the type of person who would frighten easily. Because defendant also testified, the court was able to assess defendant's personality, which was by all accounts extremely arrogant. Defendant was the only witness to testify that the complainant attended the party for the sole purpose of selling sex. The court was free to reject defendant's version of events. Credibility determinations and the weight afforded evidence are within the purview of the factfinder and will not be disturbed by this Court. *Wolfe*, *supra* at 514-515. Additionally, although there were inconsistencies between the prosecution witnesses' testimony, all conflicts are to be resolved in favor of the prosecution. *People v. Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). Viewing all the evidence in the light most favorable to the prosecutor, we find that there was sufficient evidence to support defendant's convictions. *Johnson*, *supra*.

*Hinton*, No. 246221, slip op. at 3-4. Michigan has defined criminal sexual conduct third-degree as requiring penetration by force. *See* Mich.CJI2d 20.12; Mich.CJI2d 20.15.

Against that backdrop, Petitioner's arguments fail to call into doubt any of the state court's findings of fact. The Michigan Court of Appeals agreed with the trial court and rejected Petitioner's testimony that the sexual contact was consensual, finding that the sexual contact was by force. The Michigan Court of Appeals found that the evidence established the following: (1) complainant testified she was terrified–she was threatened if she refused to participate, (2) complainant's friend agreed that complainant mouthed a plea for help when she peeked through the door, (3) others tried to open the door with a coat hanger, and (4) the complainant fled the house as soon as Petitioner opened the door. The Michigan Court of Appeals stated that, under the circumstances presented, and under Michigan law, there was sufficient evidence of force or coercion to support Petitioner's convictions for third-degree criminal sexual conduct. That decision is not an unreasonable application of or contrary to federal law. Therefore, Petitioner is not entitled to habeas relief on this claim.

### B. Revoked consent based on failure to be paid/force claim.

In this claim, Petitioner is basically re-asserting his contention that there was insufficient evidence of force, and argues that the trial court erred in convicting him because it found that complainant's initial consent was revoked when he failed to pay her. The Michigan Court of Appeals, after reviewing all the testimony taken in the case and the questions posed by the trial court in its role as factfinder, found that the trial court's comments were an attempt to indicate the improbability of Petitioner's version of the events. The Michigan Court of Appeals stated:

> We first address defendant's argument that revoked consent based on a failure to be paid was insufficient to constitute force or coercion, a necessary element of CSC III in this case. Defendant's argument presupposes that the trial court convicted defendant because it found that the complainant's initial consent was revoked when defendant did not pay her. After reviewing all the testimony taken in this case and the questions posed by the court in its role as

8

factfinder, it is apparent to us that the court's comments were an attempt to indicate the improbability of defendant's version of events.

In rendering its decision in this case, the court began by stating:

> The Court had an opportunity to hear the testimony in this matter, to observe the witnesses while testifying, to take into consideration the consistencies and inconsistencies both within and between the testimony.
>
> The Court has had an opportunity to view the exhibit that was admitted and to hear the arguments that have been presented by counsel.
>
> Just off the top, I don't know if this is because everybody, the attorneys are both men or nobody has thought it through, but the argument that has been put before the Court is, because this woman was a prostitute, that she consented. Even if she was a prostitute, she only consented if she got paid. If she didn't get paid, she wasn't consenting to sex without getting paid.

Defendant's argument regarding revoked consent stems from these comments, particularly from the last two above-quoted sentences. The court was responding to defendant's contention that the complainant was a prostitute who agreed to be paid after the sexual acts were completed. When the court said, "If she didn't get paid, she wasn't consenting to sex without getting paid," we believe the court was not making a finding of fact, but rather was indicating its belief that prostitutes do not consent to sex unless they get paid. Payment is the *precursor* to consent.

The court's subsequent statements support this interpretation.

> She didn't get paid. He didn't intend to pay her when he went in there because he said so, I let her in free, she got to eat for free, so why should I have to pay her.
>
> And then when she ran out the house, he didn't run out the house, say man, give me the money right quick so I can give her her money. Prostitutes aren't consenting to free sex. Prostitutes, if they're consenting to sex, intend to be compensated for their work.

These statements show that the court did not believe defendant's theory in light of a prostitute's standard operating procedure and the fact that, if defendant's testimony was to be believed, the complainant ran from the apartment after

9

> allegedly being told by defendant to wait in the living room for her money, and on seeing defendant outside did not demand to be paid, but rather told a friend how good defendant was. Thus, the court's comments indicated that it believed the complainant's actions were inconsistent with that of a prostitute's.

*Hinton*, No. 246221, slip op. at 2.

The record in this case established that the trial court found that complainant was afraid of Petitioner and Petitioner forced complainant to engage in unwanted sexual contact:

> I am satisfied that the complainant was afraid when he walked in on her in the bathroom. I am satisfied that acting under that fear, she was forced to engage in at least one incident of vaginal sex, one incident of oral sex, and one attempt incident of anal sex.

*Hinton*, No. 246221, slip op. at 3.

The Michigan Court of Appeals found that the facts support the trial court's finding of forced sex. On that basis, there was no unreasonable application of federal law by the state appellate court. Accordingly, Petitioner is not entitled to habeas relief with respect to this claim.

## VI. Conclusion

For the reasons stated above, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly:

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

                                                        s/Arthur J. Tarnow
                                                       Arthur J. Tarnow
Dated: September 1, 2006           United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 1, 2006, by electronic and/or ordinary mail.

                                                       s/Catherine A. Pickles
                                                     Judicial Secretary